**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

CA 06 05 mc

RHODE ISLAND HOSPITAL,

Plaintiff,

v.

MICHAEL O. LEAVITT, in his capacity as Secretary of Health and Human Services

and

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Defendants

C.A. NO. 06-

**COMPLAINT**

**PARTIES**

1. The Plaintiff, Rhode Island Hospital (Provider No. 41-0007) ("Plaintiff" or "Hospital"), is a 719 bed, non-profit acute care hospital located in Providence, Rhode Island. Plaintiff operates a graduate medical education ("GME") program in accordance with Section 1886 of the Social Security Act ("SSA"), 42 U.S.C. § 1395ww(d)(5)(B), and 42 C.F.R. § 412.105. The Plaintiff's GME program is affiliated with Brown University Medical School and each year provides training to approximately 500 physician interns and residents in 42 specialty and sub-specialty programs.

2. The Plaintiff is a licensed hospital under Title 23, Chapter 17 of the Rhode Island General Laws. Plaintiff is also a "hospital" and a Medicare "provider of services"



::ODMA\PCDOCS\BOSTON\562996\2

as those terms are defined in the SSA. 42 U.S.C. § 1395x(e) and (u); 42 C.F.R. § 489.2(b)(1).

3. The Defendant, Department of Health and Human Services, is the Federal agency charged with, among other things, administering the Medicare program. The Defendant, Michael O. Leavitt, Secretary of Health and Human Services (the "Secretary"), is the federal officer responsible for overseeing the administration of the Medicare Program. He delegates this responsibility to the Administrator of the Center for Medicare & Medicaid Services ("CMS").

**JURISDICTION AND VENUE**

4. This is a civil action brought to obtain an order vacating the CMS Administrator's decision in this case and ordering the Defendants to reimburse the Plaintiff for the indirect costs associated with training residents while operating its GME program in fiscal year ("FY") 1996 and/or to obtain judicial review of a final decision of the CMS Administrator.

5. This action arises under (i) the Declaratory Judgment Act, 28 U.S.C. § 2201, (ii) Title XVIII of the SSA, as amended, 42 U.S.C. § 1395 *et seq.*, which establishes the Medicare Program, and (iii) the Administrative Procedure Act, 5 U.S.C. §§ 551-59, 701-706 (the "APA").

6. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1395oo(f).

7. 42 U.S.C. § 1395oo(f) and 42 CFR 405.1877(f) provide for venue in this Court.

8. This Court has authority to grant the requested relief under (i) the Declaratory Judgment Act, 28 U.S.C. § 2201, (ii) the SSA, 42 U.S.C. § 1395oo(f), and (iii) the APA.

**BACKGROUND ON THE MEDICARE PROGRAM**

9. Medicare is the federal hospital and medical insurance program administered by CMS that provides health coverage to most persons over age 65 and to certain other eligible disabled persons and individuals with end stage renal disease. Medicare provides coverage to Medicare beneficiaries by making payments to Medicare participating providers on behalf of the beneficiaries.

10. Pursuant to 42 U.S.C. § 1359h, CMS contracts with regional carriers and fiscal intermediaries (generally insurance companies) who are responsible for reviewing claims and making payments to providers. The carriers oversee physician payments while the fiscal intermediaries oversee hospital payments.

11. Historically, hospitals were reimbursed for services furnished to Medicare beneficiaries on the basis of reasonable costs. In 1983, Congress amended the SSA to provide for the payment of inpatient hospital services on a prospective basis. *See* 42 U.S.C. § 1395ww. Since 1983, Congress has implemented prospective payment for many other services, including outpatient hospital services. Under the prospective payment system ("PPS"), hospitals are reimbursed for hospital services on the basis of prospectively determined national and regional rates that are based on the patient's diagnosis at discharge. The diagnosis related group ("DRG") rates are intended to estimate the average costs of caring for patients with a particular diagnosis.

12. To obtain Medicare payments from its fiscal intermediary, a hospital must file a cost report with the intermediary at the end of each FY that details the costs

incurred by the hospital and apportions such costs to Medicare beneficiaries. After receiving a hospital's annual cost report, the intermediary performs an audit and issues a notice of program reimbursement ("NPR"). The NPR sets forth the intermediary's determination of the hospital's Medicare reimbursement for that FY based on guidelines published by CMS in the form of manuals, memoranda, and instructive letters. The intermediary also issues an audit adjustment report which sets forth adjustments, if any, to the cost report made during the audit.

**INDIRECT MEDICAL EDUCATION PAYMENTS**

13. In addition to payments for services rendered to Medicare beneficiaries, teaching hospitals are also entitled to reimbursement from Medicare for the costs associated with training interns and residents (hereinafter, collectively referred to as "residents"). Teaching hospitals are entitled to two GME payments – (1) a direct GME payment which compensates hospitals for the direct costs associated with training interns and residents, such as salaries and fringe benefits and (2) an indirect GME payment ("IME") which compensates hospitals for the intangible costs associated with training interns and residents, such as increased demands on teaching staff and increased numbers of tests ordered by interns and residents. *See* H.R. Rep. No. 98-25, 140-41 (1983). This case involves a dispute over the calculation of the IME payment. *See* 42 U.S.C. § 1395ww(d)(5)(B).

14. To determine the IME payment, Congress chose to use the hospital's "teaching intensity" – the ratio of full-time equivalent ("FTE") residents to beds – as a proxy for actual IME costs. 42 U.S.C. § 1395ww(d)(5)(B). The hospital's "IME Adjustment Factor" is calculated as follows:

[{1+(R/B)}n-1] x C = "IME Adjustment Factor"

Where: R = Number of Interns and Residents Assigned to the Hospital

B = Hospital's Beds

n = .405 (Measurement Factor for Teaching Activity)

C = Statutory Adjustment Factor

The IME reimbursement amount is equal to the "IME Adjustment Factor" multiplied by the hospital's DRG payments for that FY. *Id.*

15. At issue in this case is the method for determining the variable "R" – the number of resident FTEs. The specific question is whether the statute and regulations in effect in FY 1996 allowed hospitals to include in their calculation of "R," the time interns and residents spent participating in research activities that were a required part of their training programs.

16. 42 C.F.R. § 412.105(g)(1), the IME rule in effect in FY 1996, set forth two requirements that a resident must meet to be counted toward a hospital's total FTE count. The intern or resident must be (i) enrolled in an approved teaching program and (ii) assigned to either (a) the portion of the hospital subject to the PPS or (b) the outpatient department. The rule did not exclude from the FTE count resident time spent in research rotations.

17. Although the Medicare statute was never amended, the Secretary amended the IME regulation in 2001 such that it provided that "the time spent by a resident in research that is not associated with the treatment or diagnosis of a particular patient is not countable" in the FTE count. 42 C.F.R. § 412.105(f)(1)(iii)(B); 66 Fed. Reg. 39,828, 39,896 (Aug. 1, 2001). The preamble to the new rule stated that the rule was intended to

"reiterate [the agency's] longstanding policy regarding time that residents spend in research." 66 Fed. Reg. at 39,896.

18. The SSA establishes FY 1996 as the "base year" for the determination of resident FTEs for the purpose of calculating the IME payment. 42 U.S.C. § 1395ww(d)(5)(B)(v). This means that the number of FTEs in subsequent fiscal years is "capped" by the number of FTEs the hospital had in FY 1996. Even if a hospital's FTE count were to exceed the cap in subsequent FYs, the hospital would not be entitled to additional reimbursement, regardless of the actual costs associated with training the additional residents. Thus, any increase in the FTE count in FY 1996 on appeal would carry forward to subsequent FYs, such that the hospital would be entitled to additional IME payments for all subsequent FYs, provided the hospital's FTE count in those years exceeded the cap.

**THE MEDICARE APPEALS PROCESS**

19. Following its receipt of the intermediary's NPR, a hospital is entitled to appeal the adjustments to CMS's Provider Reimbursement Review Board (the "Board" or "PRRB") pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835, if (i) the hospital is dissatisfied with the intermediary's final determination, (ii) the amount in controversy is over $10,000, and (iii) the hospital requests a hearing within 180 days after notice of the intermediary's determination. 42 U.S.C. § 1395oo(a).

20. After a hearing, the Board reaches a decision as to whether to affirm or overturn the intermediary's adjustments. The CMS Administrator is then entitled to reverse, affirm, or modify the Board's decision *sua sponte* within sixty (60) days after the hospital is notified of the Board's decision. 42 U.S.C. § 1395oo(f); 42 C.F.R. §

405.1887(a). The CMS Administrator's failure to reverse or modify the Board's decision within sixty (60) days of the date the hospital received notice constitutes an affirmance of the Board's decision, regardless of whether the Administrator notified the parties of his intention to review the decision. 42 C.F.R. § 405.1887(b).

21. A hospital is entitled to obtain judicial review in federal district court in D.C. or in the hospital's home jurisdiction (i) of any final decision of the Board not reversed, affirmed, or modified by the Administrator or (ii) any timely reversal, affirmance, or modification of the Board's decision by the Administrator. 42 U.S.C. § 1395oo(f).

## FACTS OF THIS CASE

22. The Plaintiff, a Medicare certified provider, operates a graduate medical education program approved by the Accreditation Council for Graduate Medical Education ("ACGME"), the organization responsible for the accreditation of post-graduate medical training programs. Pursuant to ACGME requirements, all residents at issue enrolled in approved programs at the Hospital in FY 1996 were required to participate in at least one research activity. During their research rotations, the residents continued to participate in other educational activities, including the provision of patient care services and attendance at lectures and grand rounds.

23. For its FY 1996 cost report, the Plaintiff sought to include in its FTE count for the purposes of IME reimbursement, the time residents spent in their required research rotations. In its NPR, the fiscal intermediary, Blue Cross Blue Shield of Rhode Island (now Arkansas Blue Cross Blue Shield) (the "Intermediary") excluded the research time from the Plaintiff's FTE count on the ground that the time was not related to patient care.



::ODMA\PCDOCS\BOSTON\562996\2

24. The Intermediary subsequently claims that it relied on the 2001 rule requiring the exclusion of resident research time unrelated to patient care, which it alleges was a "clarification" of CMS's longstanding policy to exclude research time from the FTE count. The Intermediary's exclusion of research time from the FTE count resulted in an adjustment in the FTE count of 12.06 FTEs and a reimbursement disallowance of $1,040,762.

25. On March 23, 1998, the Plaintiff filed a timely notice of appeal of the NPR on several bases. By letter dated March 30, 2000, pursuant to Board regulations, the Plaintiff added to its appeal three additional issues, including the Intermediary's IME research time exclusion. The Plaintiff argued that it was entitled to reimbursement for the time residents spend conducting research based on the statute and regulations in effect in FY 1996. The parties subsequently resolved all issues, except the IME research issue, and a Partial Settlement Agreement was filed with the Board on October 4, 2003.

26. After an in-person hearing on December 17, 2004 that addressed the IME research issue, the Board held in favor of the Plaintiff. The Board's decision is attached hereto as Exhibit A. It found that the regulations in effect in FY 1996 did not require the exclusion of research time from the FTE count; nor did they require that resident time be related to patient care. PRRB Hearing Dec. No. 2005-D67 (Sept. 13, 2005), at 4. Moreover, the Board found that the 2001 rule did not apply retroactively in FY 1996. *Id.* at 5. The Board declined to decide whether, in the alternative, the Plaintiff was entitled to additional reimbursement on the ground that 7.49 (of the 12.06) FTEs of research time were directly related to patient care. *Id.*

27. On November 16, 2005, at least sixty-two (62) days after the Plaintiff was notified of the Board's decision, the CMS Administrator issued an untimely decision reversing the Board's decision. The CMS Administrator's decision is attached hereto as Exhibit B. The Administrator ruled that resident research hours should be excluded from the FTE count.

28. On December 5, 2005, the Plaintiff sent a letter to the Intermediary requesting that the Intermediary issue an adjustment report and pay to the Hospital the IME reimbursement to which it is entitled, in accordance with the Board's decision. The Plaintiff argued that, pursuant to 42 U.S.C. § 1395oo(f) and 42 C.F.R. § 405.1877, the CMS Administrator's failure to issue a timely reversal constituted an affirmance of the Board's decision in the Plaintiff's favor.

29. The Plaintiff has exhausted its administrative remedies and now seeks relief from this Court in accordance with its rights under Section 1878(f) of the Social Security Act. 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1877.

**COUNT I: THE ADMINISTRATOR'S UNTIMELY DECISION IS INVALID**

30. Count I incorporates by reference Paragraphs 1 through 29 herein.

31. The Plaintiff received notice of the Board's decision on or before September 15, 2005. Pursuant to the SSA, 42 U.S.C. § 1395oo(f), and 42 CFR 405.1877(f), the Administrator was required to issue his reversal on or before November 14, 2005, sixty (60) days after the Plaintiff received notice of the Board's decision. The Administrator's decision was issued on November 16, 2005 – sixty-two (62) days after the Plaintiff was notified of the Board's decision.

**32.** Accordingly, the Administrator's decision was filed outside of the jurisdictional time limit permitted by the statute and regulations. The decision, therefore, is invalid and without legal effect.

**COUNT II: THE ADMINISTRATOR'S DECISION ILLEGALLY EXCLUDES INTERN AND RESIDENT RESEARCH TIME**

33. Count II incorporates by reference Paragraphs 1 through 29 herein.

34. The Administrator's decision illegally excludes intern and resident research time from the FTE count and thus improperly denies the Plaintiff Medicare reimbursement to which it is entitled. The statute and regulations in effect in FY 1996 did not allow this exclusion of resident research time from the Plaintiff's FTE count for the purpose of calculating its IME adjustment. Yet, the CMS Administrator retroactively applied the 2001 rule in FY 1996. This act was arbitrary, capricious, an abuse of discretion and otherwise contrary to law. In addition, the CMS Administrator's decision was not in accordance with the law in effect in FY 1996; nor was it supported by substantial evidence. 5 U.S.C. § 706(2).

35. The CMS Administrator also based its decision on the fact that the residents at issue were not assigned to either a PPS area of the hospital or an outpatient department. Yet, the Board found that this issue was undisputed by the parties and that the residents were all assigned to a PPS area. The Administrator's determination that the residents were not assigned to a PPS area was unwarranted by the facts, not supported by substantial evidence, and clearly erroneous, and thus ought to be reversed. 5 U.S.C. § 706(2).

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests:

a. That this Court issue a Declaratory Judgment that the decision of the Administrator is invalid and without legal effect and that the Board's decision is the final decision in this case on the ground that:

   i. The CMS Administrator's decision was untimely because it was filed at least sixty-two (62) days after the Plaintiff was notified of the Board's decision.

b. That this Court vacate the Administrator's decision on the ground that it is:

   i. Arbitrary, capricious, an abuse of discretion, and not in accordance with the law in effect in FY 1996;

   ii. Without observance of procedure required by law;

   iii. Unsupported by substantial evidence in the record; and

   iv. Unwarranted by the facts.

c. That this Court:

   i. Reverse and vacate the Administrator's Decision and order the Defendants:

      1. to include an additional 12.06 FTEs of intern and resident research time in the Plaintiff's FY 1996 IME FTE count;

      2. to pay the Plaintiff the requested reimbursement amount of $1,040,762 for FY 1996, as well as interest on such amounts in accordance with 42 U.S.C. § 1395oo(f)(2);

3. to order the intermediary to include an additional 12.06 FTEs in the Plaintiff's "base year" IME FTE cap for all subsequent FYs;
4. to order the intermediary to pay the Plaintiff the additional reimbursement associated with the increase in the "base year" IME FTE cap of 12.06 FTEs for all subsequent FYs, in accordance with 42 U.S.C. § 1395ww(d)(5)(b)(v), as well as interest on such amounts in accordance with 42 U.S.C. § 1395oo(f)(2); and
5. to review the documentation presented to the Board, which shows that 7.49 FTEs of intern and resident research time was directly related to patient care.

d. That this Court order the Defendants to pay to the Plaintiff reasonable attorney's fees and costs as required under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

e. That this Court grant to the Plaintiff such other relief in law and/or equity as the Court may deem just and proper.

DATED this 6 day of January, 2006.

RHODE ISLAND HOSPITAL

By its attorneys,

Robert G. Flanders, Jr.
Mitchell Edwards

Robert G. Flanders, Jr. (#1785)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (FAX)

Of Counsel

Lawrence W. Vernaglia
Hinckley, Allen & Snyder LLP
28 State Street
Boston, Massachusetts
(617) 345-9000
(617) 345-9020
(*pro hac* motion to be filed shortly for Mr. Vernaglia)