DEPARTMENT OF HEALTH AND HUMAN SERVICES
PROVIDER REIMBURSEMENT REVIEW BOARD
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671 FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West

Refer to:

SEP 13 2005

Case No.: 98-2026
Decision No.: 2005-D67

**CERTIFIED MAIL**

Mr. Lawrence W. Vernaglia, Esquire
Hinckley Allen & Snyder LLP
28 State Street
Boston, MA 02109

RE: Rhode Island Hospital
Provider No.: 41-0007
FYE - 09/30/1996

Dear Mr. Vernaglia:

A copy of the Provider Reimbursement Review Board's decision on the above-referenced appeal is enclosed. Please see enclosure for review and appeal information.

If you have any questions, please call (410) 786-2671.

Sincerely,

Paul J. Crofton, Director
Division of Hearings and Decisions

5 Enclosures
Final Decision Review and Appeal Information
Decision
42 USC 1395oo(f)
42 CFR 405.1875 and 405.1877

# PROVIDER REIMBURSEMENT REVIEW BOARD DECISION

2005-D67

| | |
|---|---|
| **PROVIDER -**<br>Rhode Island Hospital<br>Providence, Rhode Island | **DATE OF HEARING -**<br>December 17, 2004 |
| Provider No.: 41-0007 | Cost Reporting Period Ended -<br>September 30, 1996 |
| **vs.** | **CASE NO.:** 98-2026 |
| **INTERMEDIARY -**<br>BlueCross BlueShield Association/<br>Arkansas BlueCross & BlueShield | |

**INDEX**


**Page No.**

**Issue** ........ 2

**Statement of the Case and Statutory and Regulatory Background** ........ 2

**Findings of Fact, Conclusions of Law and Discussion** ........ 3

**Decision and Order** ........ 5

ISSUE:

Whether a resident's research time must be directly related to the diagnosis and usual care of an individual patient in order to include such time in the Full-Time Equivalent (FTE) count for Indirect Medical Education (IME) purposes, and, if so, can the Provider prove that the research time it seeks to include in its FTE count for IME purposes was spent in research directly related to the diagnosis and usual care of individual patients for the fiscal year ended (FYE) 9/30/96.

STATEMENT OF THE CASE AND STATUTORY AND REGULATORY BACKGROUND:

This is a dispute over the amount of Medicare reimbursement due a provider of medical services.

The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare & Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (DHHS) charged with administering the Medicare program. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and under interpretive guidelines published by CMS. See, 42 U.S.C. §1395(h), 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the proportion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider, and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

Effective with cost reporting periods beginning on or after October 1, 1983, short-term acute care hospitals became subject to Medicare's Prospective Payment System (PPS). Under this system, Medicare's payment for inpatient Part A operating costs is made on a per-discharge basis. Medicare discharges are classified into diagnostic related groups (DRG), and a specific payment rate based upon intensity of treatment and resources used is assigned to each DRG. In addition, Medicare also reimburses teaching hospitals for its share of costs associated with direct graduate medical education (GME) and indirect medical education (IME). The calculation of these reimbursements requires a determination of the total number of full-time residents in the teaching program. This case arises from a dispute over the Provider's full-time equivalent (FTE) count.

In general, a PPS hospital's GME costs are determined by multiplying its "average per resident amount," a hospital-specific rate that had been determined from a base period (42 U.S.C. §1395ww(h)(2)), by the number of FTE residents that worked at the facility. 42 U.S.C. §1395ww(h)(4). These costs are then apportioned to Medicare based upon a hospital's ratio of Medicare inpatient days to total inpatient days. Implementing regulations at 42 C.F.R. §413.86(f) provide specific rules for counting FTE residents for GME purposes.

Authority for the payment of IME expenses is found at 42 U.S.C. §1395ww(d)(5)(B). In general, the statute explains that a hospital's adjustment for IME is calculated by multiplying its total DRG revenue by its ratio of FTE residents to its number of beds. Implementing regulations at 42 C.F.R. §412.105(f) provide the rules for counting FTE residents for this purpose.

Rhode Island Hospital (Provider) is a tertiary care hospital located in Providence, Rhode Island. The Provider maintains a large graduate medical education program in affiliation with Brown University Medical School and employs approximately 500 interns and residents (hereinafter, "residents") in forty-two specialties and subspecialties. The fiscal intermediary at the time of the audit at issue was Blue Cross Blue Shield of Rhode Island. Subsequently, the fiscal intermediary became Arkansas Blue Cross Blue Shield. For convenience, these parties are referred to herein collectively as the "Intermediary."

In its NPR for the fiscal year ending September 30, 1996 (FY 96), the Intermediary excluded 12.06 FTEs from the Provider's resident count used to determine Provider's IME adjustment on the grounds that resident time spent engaged in research activities must be excluded. This exclusion amounted to a disallowance of $943,278. Because 1996 was the Provider's base year for calculating IME, the protested adjustments impact not only fiscal year 1996, but subsequent cost reporting periods as well.

The Provider appealed the Intermediary's adjustments to the Board and met the jurisdictional requirements of 42 C.F.R. §§405.1835-405.1841. The Provider was represented by Lawrence W. Vernaglia, Esquire, of Hinckley, Allen and Synder, LLP. The Intermediary was represented by Arthur Peabody, Jr., Esquire, of Blue Cross Blue Shield Association.

<u>FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION</u>:

The Board, after consideration of Medicare law and guidelines, the parties' contentions and evidence presented, finds as follows.

The Intermediary contends that time spent by residents performing research activities that are not directly related to the care of patients is excluded from the resident count. It cites the following authorities in support of its position:

- Section §2405.3.F.2 of the Provider Reimbursement Manual states that a resident must not be included in the IME count if "the individual is engaged exclusively in

research."[1] "Exclusively" is further defined in 66 Fed. Reg. 39896 (August 1, 2001) as meaning that the research is not associated with the treatment or diagnosis of a patient.

- 42 C.F.R. §412.105(f)(1)(iii)(B), as amended in the August 1, 2001 *Federal Register*, provides that "[t]he time spent by a resident in research that is not associated with the treatment or diagnosis of a particular patient is not countable." CMS notes in the commentary that the amendment is a clarification of long-standing policy.[2]

The Provider contends that the time residents spent performing research activities as part of an approved residency program is included in the IME calculation based upon the pertinent statute and controlling regulation. While 42 U.S.C. §1395ww(d)(5)(B) provides specific instructions for calculating the IME adjustment, it does not disallow time spent by residents performing research activities, regardless of whether it is related to patient care. Regulations at 42 C.F.R. §412.105(f) provide more specific rules for counting FTE residents for IME. These rules require only that residents who work in non-hospital settings be engaged in patient care activities in order to be included in the IME count. The Provider also contends that the August 1, 2001 amendment to the IME regulation cannot be viewed as a clarification of existing policy since it establishes new recordkeeping requirements, i.e., the recording of time spent by residents performing patient and non-patient care activities while assigned to a research rotation. Accordingly, this amendment cannot be applied to the subject cost reporting period since retroactive rule making is prohibited.

The Board finds that the regulation in effect during the subject cost reporting period does not exclude research time from the IME resident count computation, nor does it require resident time to be related to patient care. As noted above, 42 C.F.R. §412.105(f) provides the rules for counting FTE residents for IME purposes. In part, the regulation states:

> (1) . . . the count of full-time equivalent residents for the purpose of determining the indirect medical education adjustment is determined as follows:
>
> (i) The resident must be enrolled in an approved teaching program.
>
> (ii) In order to be counted, the resident must be assigned to one of the following areas:
>
> (A) The portion of the hospital subject to the prospective payment system.

[1] See Intermediary's Post-Hearing Brief at page (p) 13 and Intermediary Exhibit I-18.

[2] See Intermediary's Post-Hearing Brief at pp. 9 and 10.

(B) The outpatient department of the hospital.

Since it is undisputed that the residents at issue in this case were enrolled in an approved GME program and that they worked in either the portion of the Provider's facility subject to PPS or an outpatient area, the Intermediary's adjustments were improper. The Board notes that this finding is consistent with the United States District Court findings in Riverside Methodist Hospital v. Thompson, No. C2-02-94 (S.D. Ohio, July 31, 2003) (Riverside). In part, the court concluded that "the [IME] regulation as it was written at the time in question, does not by its plain language contain any requirement that the time spent by residents had to be spent in direct patient care in order to be counted."[3]

Moreover, the Board finds that the 2001 amendment to the IME rule excluding non-patient care research time from the resident count represents a change in policy that cannot be applied retroactively to the Provider's 1996 cost reporting period. As the court in Riverside explained, the IME regulation is clear, in that the time spent by residents performing non-patient care related activities is not excluded from the resident count, and "if the Secretary desires to include a new requirement regarding excludable time, it must be done by amendment, and in compliance with the necessary administrative procedures for amending regulations. . . ."[4]

The Provider also argues that, even if the research exception applies, it documented that 7.49 FTEs were directly related to specific patients' care. The Intermediary rejected the documentation as insufficient. In light of the Board's decision that research time is includable for the fiscal periods in issue, the alternate position is moot, and the Board makes no findings as to the sufficiency of the Provider's documentation.

DECISION AND ORDER:

The Intermediary's adjustments excluding research time from the FTE resident count used to calculate the Provider's adjustment for IME were improper. The Intermediary's adjustments are reversed.

Board Members Participating:

Suzanne Cochran, Esq.
Dr. Gary B. Blodgett
Martin W. Hoover, Jr., Esq.
Elaine Crews Powell, C.P.A.
Anjali Mulchandani-West

---

[3] See Riverside, pg. 15, P-4 page 5, P-4 page 6.
[4] Id.

FOR THE BOARD:

SEP 13 2005

Suzanne Cochran, Esquire
Chairperson