UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND HOSPITAL,

v. C.A. No. 06-05 T

MICHAEL O. LEAVITT ET AL.

**PLAINTIFF'S LOCAL RULE 16 PRETRIAL STATEMENT**

Rhode Island Hospital ("RIH") maintains a large graduate medical education program, in affiliation with Brown University Medical School, employing approximately 500 interns and residents ("residents") in forty-two specialties and sub-specialties. This case is about the obligation of the Medicare program to provide "indirect medical education" ("IME") payment adjustments to RIH for the costs of training these residents. The government seeks to reduce RIH's IME payments for 1996 by $943,278 because the residents spent time conducting and learning about research, which the Accreditation Council for Graduate Medical Education requires as part of their approved medical education programs.

Following a hearing on December 17, 2004, the submission of pre- and post-hearing briefs, written evidence, and oral testimony before the Provider Reimbursement Review Board (the "PRRB"), the PRRB ruled in favor of RIH. The Centers for Medicare & Medicaid Services ("CMS") Administrator subsequently issued a decision purporting to overturn the PRRB's decision, although CMS failed to issue the decision within the required 60-day period. RIH seeks judicial review of the Administrator's decision to declare that the PRRB's decision remains in effect and that the PRRB correctly decided the issue. RIH requests that the Court order the Intermediary to make the payments as instructed by the PRRB.

## BACKGROUND AND ELEMENTS OF RIH'S CLAIM

Medicare Part A payments to hospitals are processed through Fiscal Intermediaries – private companies that audit the hospital's annual cost reports and make payments pursuant to the Medicare Act and applicable regulations. Part A of the Medicare program reimburses hospitals in two ways for the expenses they incur in teaching medical residents: (1) direct medical education payments and (2) IME payments. Only the IME payment is at issue in this case. The IME payment is an adjustment to Medicare prospective payments system ("PPS") rates that are paid to hospitals on a patient-by-patient basis. Thus, the IME adjustment is an add-on payment for hospitals that took on the obligation of training medical residents.

The IME adjustment is determined by dividing the number of residents by the number of hospital beds, and multiplying that ratio by two statutorily-assigned factors – one constant and one variable. See Section 1866(d)(5)(B) of the Social Security Act (the "IME Statute")). The CMS regulations in effect during FYE 9/30/96 reflect this same formulation.

Nevertheless, CMS argues that, before counting the number of residents, a hospital must reduce the number of residents by the amount of time residents spent conducting research that was not directly related to the treatment of particular patients in the hospital. CMS contends that this case is governed, not by the IME Statute and regulations that were in effect in 1996, but instead by a 2001 amendment to the IME Rule ("2001 Rule") under which resident research time not associated with the treatment or diagnosis of a patient must be excluded. But CMS's argument is utterly discredited by the holding in Riverside Methodist Hospital v. Thompson, 2003 U.S. Dist. LEXIS 15163 (S.D. Ohio 2003). The Court in that case rejected the agency's argument "that any resident time that is not directly related to patient care – using as an example, research – should be excluded." Although CMS did not appeal the Riverside decision, it now

seeks a second bite at the apple in this case. But even if the Riverside decision was incorrect, the 2001 Rule should not be applied retroactively to this case, which arose in 1996.

Nothing in the statute or regulations in effect in 1996 required that resident research time be excluded from a hospital's resident count for IME purposes. At the PRRB Hearing, the Intermediary's sole witness conceded this fact. Indeed, the Intermediary's witness admitted that neither the Intermediary nor any hospital had any instructions directing them to exclude research time, as CMS now asserts was the law. The IME Statute's legislative history demonstrates that Congress enacted the IME Statute because it believed that PPS rates were not sufficient to reimburse teaching hospitals for the increased costs associated with training residents. Research time is an indispensable part of the resident training program. Because these increased costs were not quantifiable, Congress chose to use the hospital's "teaching intensity" – the ratio of residents to beds – as a proxy for actual IME costs. Thus, CMS's retroactive application of the rule excluding research time is directly contrary to Congressional intent and the plain language of the IME Statute.

The PRRB found for RIH, holding that RIH was entitled to 12.06 Full Time Equivalents ("FTEs") under the plain language of the IME Statute and regulations. Because the CMS Administrator's purported decision overturning the PRRB was untimely, it is without effect.[1] But even if the Administrator had acted in a timely fashion, the Administrator's decision is arbitrary, capricious, contrary to law, unsupported by substantial evidence and an abuse of discretion. Thus, the Court should vacate the CMS Administrator's decision and reinstate the PRRB's decision.

[1] See 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1871(b); and 405.1875.

RHODE ISLAND HOSPITAL

By its counsel,

/s/Mitchell R. Edwards
Robert G. Flanders, Jr. (#1785)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
rflanders@haslaw.com
medwards@haslaw.com

Lawrence W. Vernaglia (admitted *pro hac*)
Foley & Lardner LLP
111 Huntington Ave.
Boston, MA 02199
(617) 342-4079
(617) 342-4001 (fax)
lvernaglia@foley.com

Dated: September 15, 2006

## CERTIFICATION

I hereby certify that on September 15, 2006, a copy of foregoing Plaintiff's Local Rule 15 Pretrial Statement was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/Mitchell R. Edwards

#748454v2