**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT, *et al.*,<br><br>Defendants. | ) | Civ. Action No. 06-05 ET |

**PLAINTIFF'S STATEMENT OF
UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule of Civil Procedure 56, Plaintiff Rhode Island Hospital respectfully submits the following statement of facts that are not in dispute:

1. Plaintiff Rhode Island Hospital ("RIH") is a Medicare-participating non-profit acute care hospital located in Providence, Rhode Island. Complaint ("Compl.") and Answer ¶ 2.

2. In affiliation with Brown University Medical School, RIH operates approved graduate medical education programs for interns, residents and fellows (collectively "residents") in 42 specialties and sub-specialty programs. Comp. and Answer ¶ 1; Administrative Record ("A.R.") at 167.

3. The residency programs at issue in this case are accredited by the Accreditation Council for Graduate Medical Education ("ACGME"), the organization recognized by the Centers for Medicare & Medicaid Services ("CMS") as an acceptable authority for determining which graduate medical education programs are "approved" for purposes of the Medicare program and the direct graduate medical education ("GME") and indirect medical education ("IME") payment adjustments. Compl. and Answer ¶ 22; A.R. at 163-164.

4. The ACGME requires medical residents to participate in "scholarly activities," such as research, as a component of their training program. Compl. and Answer ¶ 22; A.R. at 170; 1842-1945.

5. During their research rotations, residents continue to participate in other approved program activities, including the provision of direct patient care services, being on-call at RIH, and participation in grand rounds with the teaching physician. A.R. at 170.

6. Residents in RIH's approved graduate medical education programs are required to participate in scholarly activities in order to obtain their specialty or subspecialty certification. Compl. and Answer ¶ 22; A.R. 1842-1945.

7. The Medicare regulation in place in 1996 required that in order to include a resident in the full-time equivalent ("FTE") count for purposes of determining a hospital's IME adjustment, the resident must be "enrolled in an approved teaching program" and be assigned to either the portion of the hospital subject to the inpatient prospective payment system ("PPS") or to an outpatient department of the hospital. 42 C.F.R. § 412.105 (1996).

8. RIH submitted a Medicare cost report to its fiscal intermediary, Blue Cross Blue Shield of Rhode Island (now known as Arkansas Blue Cross Blue Shield) ("Intermediary"), for its 1996 fiscal year. Compl. and Answer ¶ 23; A.R. at 2079-2080. In determining its total number of FTE residents for purposes of its IME calculation on its 1996 cost report, RIH included time spent by residents enrolled in ACGME-approved teaching programs who were assigned to the PPS portions and outpatient departments of the hospital. A.R. at 35. Time relating to residents assigned to RIH who were engaged in required research and other scholarly activities as part of an approved residency program was included in this count. A.R. at 2079-2080.

9. RIH excluded from its FTE count residents who were assigned to a non-PPS portion of the hospital, specifically the psychiatric unit. A.R. at 171. For 1996, there were no FTE residents at RIH who rotated to the inpatient rehabilitation unit or ventilator unit. *Id.*; *see also* A.R. at 201.

10. For the 12.06 residents at issue, RIH also claimed and appropriately received direct GME reimbursement. A.R. at 195.

11. After its audit of RIH's 1996 cost report, the Intermediary adjusted the hospital's 1996 IME payment to reflect exclusion of all time spent by residents engaged in the scholarly activities portion of their ACGME-approved resident program from the IME calculation, even

when other approved activities, such as patient care, were performed during the scholarly activity months. A.R. at 236-37, 243-44, and 2079-80. The Intermediary did not exclude any resident time when scholarly activities, such as research, were performed from RIH's direct GME payment adjustment for which the hospital was reimbursed 100 percent. A.R. at 195.

12. The Intermediary's exclusion of research time from RIH's FTE count resulted in an adjustment in the FTE count of 12.06 FTEs and a reimbursement disallowance of $1,040,762. Compl. and Answer ¶ 24.

13. RIH timely appealed its fiscal year 1996 cost report to the Provider Reimbursement Review Board ("PRRB"), appealing the Intermediary's disallowance of resident time spent in research and other scholarly activities. Compl. and Answer ¶ 25.

14. At the PRRB hearing, RIH witnesses testified that the residents were assigned to a portion of the RIH subject to PPS or an outpatient department of the hospital. A.R. at 171, 190. The Intermediary did not introduce any evidence to the contrary at the PRRB hearing.

15. After an in-person hearing on December 17, 2004, the PRRB held in favor of the Hospital, finding that the regulation in effect for 1996 did not exclude resident research time from the IME resident count. PRRB Hearing Dec. No. 2005-D67 (September 13, 2005), A.R. at 31-36. The PRRB also found that the 2001 amendment to the IME regulation excluding non-patient care research time from the resident count "represents a change in policy that cannot be applied retroactively to the Provider's 1996 cost reporting period." PRRB Hearing Dec. No. 2005-D67 at 5; A.R. at 35.

16. In addition, the PRRB found it undisputed that RIH's residents were enrolled in an approved graduate medical education program and were assigned to the PPS portion or to an outpatient department of the hospital. A.R. at 35.

17. One November 16, 2005, the CMS Administrator reversed the PRRB's decision. *See Rhode Island Hospital v. Blue Cross Blue Shield Association/Arkansas Blue Cross & Blue Shield* (November 10, 2005) at 9; A.R. at 2-12.

18. Having exhausted its administrative remedies, RIH timely appealed the Administrator's final decision, pursuant to its rights under 42 U.S.C. Section 1395oo(f) and 42 C.F.R. § 405.1877. Compl. and Answer ¶ 29.

Respectfully submitted,

RHODE ISLAND HOSPITAL

By its counsel,

/s/Mitchell R. Edwards
Robert G. Flanders, Jr. (#1785)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (facsimile)
rflanders@haslaw.com
medwards@haslaw.com

Lawrence W. Vernaglia (admitted *pro hac*)
Foley & Lardner LLP
111 Huntington Ave.
Boston, MA 02199
(617) 342-4079
(617) 342-4001 (facsimile)
lvernaglia@foley.com

Dated: December 27, 2006

**CERTIFICATION**

I hereby certify that on December 27, 2006 a copy of the foregoing Plaintiff's Statement of Material Facts Not in Dispute was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/Mitchell R. Edwards