**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 06-05 ET |
| | ) | |
| MICHAEL O. LEAVITT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Court should deny the Defendants' motion for leave to file a supplemental memorandum regarding other potential sources of federal funding available to teaching hospitals for scholarly activities for several reasons.

First, the fact that there may be federal funding available to teaching hospitals for scholarly activities other than funding associated with the indirect medical education ("IME") statute and regulations is irrelevant. The government has failed to establish that there is any connection whatsoever between the availability of federal research funds and the Medicare IME payment adjustment. Under the governing Medicare statute and regulations, the potential availability of non-Medicare-related federal funding for some activities engaged in by teaching hospitals has no bearing on the legal question before this Court.

Second, there is nothing in the plain language of the IME statute or its legislative history that lends any credence to the government's belated argument on this point. If Congress had

intended the Secretary to take into account external research funding in the determination of the IME resident count, it would have done so in the statute; at a minimum, such a putative consideration would have been reflected in the legislative history. But that is not the case. Indeed, the defendants incorrectly rely upon the 1997 Conference Report, which expanded the scope of the IME statute to include time spent by residents involved in "patient care activities" in "non-hospital settings" (e.g, clinics, physician offices, etc.).[1] The 1997 amendment was the only instance in which Congress imposed a patient-care requirement with respect to the IME resident count and it applies only to residents training in non-hospital settings. Thus, Congress knew how to impose a patient care requirement when it wanted to do so, but it hasn't done this with respect to hospital-based interns and residents, only those in non-hospital settings. Thus, the 1997 amendment is not applicable to RIH. In fact, CMS knew that Congress intended the treatment of residents at nonhospital settings to be different from those working at the hospital as the agency incorporated that principle in a distinct section of the regulation, 42 C.F.R. § 412.105(f)(1)(ii)(C) ("Effective for discharges occurring on or after October 1, 1997, the time spent by a resident in a nonhospital setting in patient care activities, as defined in § 413.75(b) of this subchapter, under an approved medical residency training program is counted towards the determination of full-time equivalency if the criteria set forth in § 413.78(c), § 413.78(d), or § 413.78(e) of this subchapter, as applicable, are met."). CMS did not apply the "patient care activities" language of 42 C.F.R. § 412.105(f)(1)(ii)(C) to all resident activities; it only included that provision in the new section for nonhospital residents. If the Secretary believed that CMS should consider

[1] 42 U.S.C. § 1395ww(d)(5)(B)(iv) states that "[e]ffective for discharges occurring on or after October 1, 1997, all the time spent by an intern or resident in patient care activities under an approved medical residency training program at an entity in a nonhospital setting shall be counted towards the determination of full-time equivalency if the hospital incurs all, or substantially all, of the costs for the training program in that setting."

external research funding in the determination of the resident count, it would have done so when it promulgated the pertinent IME regulation. But, again, that is not the case.

RIH has demonstrated that the statute and regulation compel only one rational conclusion: the time spent by hospital-based residents in research and other scholarly activities in an approved program must be included in RIH's IME count for 1996 based on the plain language of the statute and regulation and the legislative history.

Third, the government's new argument entirely misapplies the applicable statute, 42 U.S.C. § 1395ww(d)(5), in support of its inaccurate statement that the "availability of research-related funding outside the prospective payment system created by Congress for acute-care hospitals . . . lends further support to" the Secretary's position. Defendants' Memorandum at p. 2. As RIH has explained in its papers, the plain language of the IME statute at 42 U.S.C. § 1395ww(d)(5) and of the regulation at 42 C.F.R. § 412.105(g) in effect in 1996 mandated that the IME payment adjustment include all resident activities, including research activities not directly related to patient care. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Plaintiff's Objection to Defendants' Motion for Summary Judgment.

Fourth, the government has had ample opportunity to brief all the pertinent issues related to the sole legal question before this Court: whether the Centers for Medicare & Medicaid Services ("CMS") Administrator properly excluded the time spent by residents in approved research and other scholarly activities from the 1996 payment adjustment that RIH received for Medicare for its IME payment. At no previous time has the government raised the issue of availability of non- Medicare-related federal funds to teaching hospitals for scholarly activities as a relevant consideration. Indeed, the only pertinent discussion in the record relating to outside funding of research was testimony that none of the residents in question at RIH received any

such research funding, which testimony the Defendants have never attempted to refute. *See* A.R. at 180, 210, 220. The Defendants have never before suggested that this issue is germane to the case or to the underlying legal issues. Nor is it cited in the Administrator's decision as a basis for that decision. A.R. at 1-12. There is no new legal development or precedent on which to base the Defendants' last-minute change of strategy.

Therefore, for these reasons, RIH requests that the Court deny Defendants' request for leave to file a supplemental memorandum. Alternatively, should the Court grant the Defendants' request for leave, we submit that the government has not demonstrated the availability of non-Medicare-related federal funding to teaching hospitals for conducting scholarly research has any relationship to the legal question presented in this case. Thus, it should not be considered by the Court in adjudicating the parties' cross-motions for summary judgment.

RHODE ISLAND HOSPITAL

By its counsel,

/s/ Robert G. Flanders, Jr.

Robert G. Flanders, Jr. (#1785)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (facsimile)
rflanders@haslaw.com
medwards@haslaw.com

Lawrence W. Vernaglia (admitted *pro hac*)
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199
(617) 342-4079
(617) 342-4001 (facsimile)
lvernaglia@foley.com

Dated: May 11, 2007

**CERTIFICATION**

I hereby certify that on May 11, 2007, a copy of foregoing Plaintiff's Opposition to Defendants' Supplemental Motion for Leave was filed and sent electronically to the following counsel of record:

/s/ Robert G. Flanders, Jr.

#801752